IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES E. LEWIS,        Plaintiff, | : : : | CIVIL ACTION |
| v. | : : | |
| T. ENGLISH, et al.,        Defendants. | : : : | No. 20-2790 |

**MEMORANDUM**

**Schiller, J.**                                                                                           **February 10, 2022**

Plaintiff James Lewis, proceeding *pro se*, brings § 1983 claims against Defendants T. English, D.L. Taylor, and Anthony Monaco, alleging that they acted with deliberate indifference in connection with English's alleged assault of Lewis at SCI Chester State Correctional Facility ("SCI Chester") in violation of the Eighth Amendment's proscription against cruel and unusual punishment. Lewis alleges that English struck a food tray out of his hand and forcibly closed a door on his fingers. He further alleges that Monaco inadequately treated his injury.

Taylor was dismissed from this action on September 22, 2020. The Court entered default against English on December 16, 2021.[1]

Before the Court is Monaco's Motion to Dismiss Plaintiff's Amended Complaint or in the Alternative, Motion for Summary Judgment. Lewis did not respond to Monaco's motion; accordingly, the Court considers Monaco's motion to be uncontested. Because Lewis is a *pro se* plaintiff, however, the Court will consider the merits of Monaco's motion instead of dismissing

---

[1] Lewis has until February 28, 2022 to file a motion for judgment containing his desired relief. (*See* ECF No. 44.)

1

the Amended Complaint outright. Upon review of its merits, the Court will grant Monaco's motion and dismiss all claims asserted against him for the reasons that follow.[2]

I.  **FACTUAL BACKGROUND**

Lewis is a convicted and sentenced state prisoner at SCI Chester. (ECF No. 11 at 4.) On the morning of November 1, 2019, English, a correctional officer, hit a food tray out of Lewis's hand. (*Id.*) He then slammed a door on Lewis's hand, jamming his fingers in the door. (*Id.*) One of Lewis's fingers was "cut deep" and he lost "a lot of blood." (*Id.* at 6-7.) The nerves in his hand were also damaged. (*Id.* at 7.) Lewis asked English to call the prison's medical department, but he did not. (*Id.* at 6.)

Approximately thirteen hours later, around 7:18 p.m., Monaco, a nurse, visited Lewis's cell. (*Id.* at 5.) Monaco was accompanied by Taylor, another correctional officer, as well as a state trooper. (*Id.*) Lewis was instructed to relay the events of that morning to the state trooper. (*Id.*) Monaco also spoke to the state trooper. (*Id.*) Taylor and Monaco took photos of Lewis's injury and Monaco put a bandage on Lewis's hand. (*Id.* at 6.)

---

[2] Although Monaco titles his motion as "in the Alternative, [a] Motion for Summary Judgment," he dedicates no space to explaining why the Court should treat his motion as such if it opts not to treat it as a motion to dismiss. The decision regarding whether to convert a motion to dismiss to a motion for summary judgment is within the sound discretion of the district court. *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992). Perhaps the reason Monaco believes his motion may be treated as one for summary judgment is because he has appended nearly 90 pages of exhibits to the motion. Although the Court will grant Monaco's motion on grounds not related to these exhibits, to the extent the Court considered any of these exhibits in declining to grant Monaco's motion on other grounds, the Court finds that the exhibits considered—only those related to Lewis's grievance process in connection with his allegations against the defendants in this action—are "integral to or explicitly relied upon in the Complaint," since Lewis's Amended Complaint contains several allegations regarding the grievance process. *See In re Rockefeller Ctr. Props., Inc. Secs. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). The Court did not consider any other exhibits in deciding this motion. The Court therefore declines to convert Monaco's motion to dismiss into a motion for summary judgment.

## II. PROCEDURAL HISTORY

Lewis filed suit against English and Taylor, as well as three other prison officials, on May 26, 2020. (ECF No. 2.) On August 6, 2020, this Court granted Lewis leave to proceed *in forma pauperis* and dismissed his initial Complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). *See Lewis v. English*, Civ. A. No. 20-2790, 2020 WL 4530696, at *4 (E.D. Pa. Aug. 6, 2020). Lewis filed the Amended Complaint asserting causes of action against English, Taylor, and Monaco on September 4, 2020. Taylor was dismissed from the action on September 22, 2020 because "the factual allegations as to Taylor do not state a plausible claim for violation of Lewis's civil rights" since "Lewis explicitly states in his Amended Complaint that 'D.L. Taylor did nothing wrong. D.L. Taylor [is] the only one who care[s].'" (ECF No. 12 (citing ECF No. 11 at 5).) The three other prison official defendants named in Lewis's initial Complaint were not named in the Amended Complaint and, accordingly, were also terminated from the action on September 22, 2020. (*Id.*)

After several attempts at service, English was served on July 20, 2021. (ECF No. 36.) Monaco executed a waiver of service on July 21, 2021. (ECF No. 35.) Monaco moved to dismiss the claims stated against him in the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) on September 2, 2021. (ECF No. 37.) Lewis filed a motion for default against English on October 14, 2021. (ECF No. 39.) The Court entered default against English on December 16, 2021. (ECF No. 44.) Also on December 16, 2021, the Court ordered Lewis to respond to Monaco's motion to dismiss by January 15, 2022. (*Id.*) Lewis has yet to respond to Monaco's motion to dismiss.

## III. STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim, a district court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the non-moving

3

party. *See Bd. of Trs. of Bricklayers & Allied Craftsman Local 6 of N.J. Welfare Fund v. Wettlin Assocs.*, 237 F.3d 270, 272 (3d Cir. 2001). A court need not, however, credit "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). A plaintiff has stated a plausible claim for relief if his "[f]actual allegations . . . raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007).

A *pro se* complaint, however inartfully pleaded, must be held to a less stringent standard than a formal pleading drafted by an attorney. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Because Lewis brings this action *pro se*, the Court will liberally construe the Amended Complaint and "apply the applicable law, irrespective of whether [he] has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002).

Rule 7.1(c) of the Local Rules of Civil Procedure for the United States District Court for the Eastern District of Pennsylvania provides that a motion may be granted as uncontested in the absence of a timely response. However, the Third Circuit Court of Appeals discourages dismissing *pro se* civil rights actions based solely on a plaintiff's failure to respond to a motion to dismiss without considering the merits of that motion. *See Xenos v. Hawbecker*, 441 F. App'x 128, 131 (3d Cir. 2011); *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991). Therefore, the Court will consider the merits of Monaco's motion.

**IV.     DISCUSSION**

The Court agrees with Monaco that Lewis has failed to allege that he provided Lewis with inadequate medical care in violation of the Eighth Amendment's prohibition of cruel and unusual punishment. To set forth a cognizable Eighth Amendment claim, an inmate must allege both: (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate

indifference to that need. *Estelle*, 429 U.S. at 103-05. Here, the Amended Complaint does not sufficiently allege that Monaco acted with deliberate indifference in addressing Lewis's injury.

In order to properly allege deliberate indifference, a plaintiff is required to show that the defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Neither "an inadvertent failure to provide adequate medical care" nor "negligen[ce] in diagnosing or treating a medical condition" rise to the level of deliberate indifference without "some more culpable state of mind." *Estelle*, 429 U.S. at 105-06; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Moreover, "mere disagreement as to the proper medical treatment" does not "support a claim of an eighth amendment violation." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987).

This Court previously dismissed Lewis's deliberate indifference claim as it related to the allegations in the initial Complaint concerning his medical treatment. There, it was determined that:

> Lewis has not stated a plausible claim for deliberate indifference against any of the named Defendants. Notably, Lewis's allegations, although sparse, demonstrate that he did receive medical treatment for his middle finger. Specifically, Lewis alleges that Sergeant Taylor came to his cell with a nurse. While Lewis may have disagreed with the extent or amount of treatment received, he has not alleged enough facts from which one could plausibly infer that he had a serious medical need that was regarded with deliberate indifference. Lewis should also be mindful that simple negligence is not a sufficient basis for a constitutional claim.

*Lewis*, 2020 WL 4530696, at *3 (internal citations omitted).

Although Monaco was not named as a defendant in the initial Complaint, the allegations in the Amended Complaint similarly do not plausibly support that Monaco acted with deliberate indifference in treating Lewis's injury. Lewis does not dispute that he received medical care for his injury; indeed, he was examined by Monaco, who determined that Lewis's hand would be best

5

treated with a bandage. (ECF No. 11 at 6.) Lewis does not allege that his injuries required further care or that he ever asked for more care. Rather, Lewis disagrees with the type and extent of care he received, which does not rise to the level of deliberate indifference. The Amended Complaint further does not contain any allegations concerning Monaco's state of mind while treating Lewis. At most, Monaco acted with simple negligence. *See Correa-Martinez v. Rahway Hosp.*, Civ A. No. 21-11076, 2021 WL 5195690, at *5 (D.N.J. Nov. 8, 2021) (dismissing complaint when plaintiff did not sufficiently plead deliberate indifference on the part of defendants because he "fail[ed] to allege or plead facts that suggest that [defendants] had the requisite mental state" and "merely allege[d] that [defendants] examined his hand and determined that he had not broken it when, in fact, he had broken it" which, at most, "amounts to negligence, not deliberate indifference"); *Scott v. Manenti*, Civ. A. No. 15-7213, 2016 WL 80640, at *4 (D.N.J. Jan. 7, 2016) (dismissing complaint when it did not contain facts specifically alleging how defendant was "involved in denying medical treatment and how she exhibited deliberate indifference towards Plaintiff's condition").

Lewis's claims against Monaco are therefore dismissed.[3]

---

[3] Monaco also argues that Lewis's claims against him should be dismissed because Lewis failed to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act and Pennsylvania Department of Corrections Policy ("DC-ADM") 804. DC-ADM 804 enumerates the process through which an inmate must file grievances prior to filing suit in federal court. Lewis alleges that he filed grievances with SCI Chester in connection with the November 1, 2019 incident but "SCI Chester never got back to" him after he appealed its initial response and he "[keeps trying] to appeal." (ECF No. 11 at 9.) Although Monaco successfully subpoenaed copies of Lewis's grievances, Monaco is nevertheless "not aware whether Plaintiff received any additional response to" his grievances regarding the appeals process. (ECF No. 37 at 8.) Monaco also argues that Lewis's grievances inadequately addressed Monaco's involvement in the November 1, 2019 incident by "nam[ing] Nurse Monaco as a witness to the event" without being "critical of Nurse Monaco" or "allud[ing] to any belief that the medical care he received from Nurse Monaco was deficient." (*Id.* at 10.)

The Court declines to dismiss Lewis's claims based on the patchwork, incomplete story of Lewis's grievance process put forth in Monaco's motion. Moreover, the Amended Complaint

V.     CONCLUSION

For the reasons set forth above, Monaco's motion to dismiss is granted. An Order consistent with this Memorandum will be docketed separately.

---

states that the November 1, 2019 incident was being "investigated as [] inmate abuse," (ECF No. 11 at 9), for which associated grievances are "handled in accordance with [Department of Corrections] policy DC-ADM 001," DC-ADM 804 § 1.D.2. "Many District Court opinions in Pennsylvania have found that allegations of abuse do not have to be filed through all levels of the DC-ADM 804 system if the inmate reports abuse through DC-ADM 001." *Moore v. Lamas*, Civ. A. No. 12-223, 2017 WL 4180378, at *9 (M.D. Pa. Sept. 21, 2017) (collecting cases). Monaco's motion does not address DC-ADM 001 at all, providing more support for the Court's decision to decline to dismiss Lewis's claims against Monaco based on Lewis's purported failure to exhaust administrative remedies. *See Parran v. Rozum*, No. 239 C.D. 2012, 2013 WL 3942101, at *3 (Pa. Commw. Ct. Jan. 4, 2013) (reversing dismissal of a complaint for failure to exhaust administrative remedies when neither "the trial court nor defendants offer any explanation as to . . . whether the grievance procedure is mandatory for abuse claims, in light of the language in DC-ADM 001"); *see also Talley v. Pa. Dep't of Corr.*, Civ. A. No. 19-1687, 2019 WL 6050744, at *4 (E.D. Pa. Nov. 14, 2019) (citing *Parran*, 2013 WL 3942101, at *3) (declining to dismiss complaint for plaintiff's failure to follow DC-ADM 804 because defendant did "not explain why [plaintiff] was required to proceed under DC-ADM 804 where that policy provides that '[a] grievance dealing with allegations of abuse shall be handled in accordance with Department policy DC-ADM 001, Inmate Abuse'").

7